EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter "Agreement") is entered into effective this ___ day of September, 2017, by and between Rick and Jason (hereinafter "Rick and Jason"), on the one hand, and Holy Smokes USA, LLC (hereinafter "Holy Smokes") and David Bunevacz, on the other hand (Holy Smokes and Bunevacz, are sometimes collectively referred to herein as the "Smokes Parties"), in reference to the following:

### ARTICLE I: RECITALS

1.01  Negotiations between Rick and Jason and Holy Smokes, the Parties entered into a Purchase Contract whereby Rick and Jason agreed to fund a total of One million Two Hundred Thousand Dollars ($1,200,000.00) for the purpose of purchasing rights in the Huntington Park project, hoover project, extraction machine, and warrants of shares.

1.02  Rick and Jason claim they are entitled to payment under the agreement from Holy Smokes, and that Holy Smokes has agreed to pay Rick and Jason back plus interest.

1.03  Holy Smokes contends that payment has been agreed between the parties.

1.04  This Agreement is intended to settle and resolve any and all disputes, disagreements, claims and demands relating to or arising out of the Contract, whether known or unknown, which was or could have been litigated between the Parties, as well as to resolve fully the relationship between the Parties.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated herein by reference, and for such other good and valuable consideration as is hereinafter set forth, the Parties to this Agreement hereby agree as follows:

## ARTICLE II: TERMS OF SETTLEMENT AND RELEASE

2.01 In full and final resolution and settlement, Holy Smokes shall pay Rick and Jason the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00), as follows:

2.01.01. On the closing of escrow of the property at 23810 Spinnaker ct. Valencia Ca. 91355 Holy Smokes shall pay the sum of Five Hundred Thousand Dollars ($500,000.00).

2.01.02. Beginning on October 30, 2017, Holy Smokes shall cause a payment to be made to Rick and Jason of the additional sum of Three Hundred Thousand ($300,000.00) via cashier's check or by wire.

2.01.03. On November 30, 2017, Holy Smokes shall pay Rick and Jason the sum of $200,000.00.

2.01.04. On February 30, 2018, Holy Smokes shall pay Rick and Jason the sum of $500,000.00All of the payments referred to above except the first payment of $500,000.00 shall be made by cashier's check or by wire transfer to the following bank account (the "Account"):

Beneficiary Name: Jason Grace
Bank:
Routing Number:
Account Number:

2.01.05. From time to time Rick or Jason may advise the Smokes Parties of a different bank account by giving seven days written notice.

2.02 If any of the payments referred to in this article are not timely made, Rick and Jason may advise the Smokes Parties in writing of said default in payment. In the first two instances of such default, the Smokes Parties shall have five (5) business days following receipt of said Notice to make the payment required. If they fail to cure such default within such five (5) business day period, the entire unpaid principal balance referenced herein, at the option of Rick and Jason, shall become immediately due and payable. In addition, if the Smokes Parties are in

default more than twice, then they shall have no right of cure, and Rick and Jason may declare the entire unpaid balance immediately due and payable. Any payment scheduled to be made hereinabove on a weekend or holiday shall be deemed due on the following business day.

2.03   Holy Smokes may pre-pay any or all of the principal balance due hereinabove without penalty.

### ARTICLE III: RELEASE

3.01   Upon the full payment of the amounts specified in Article II above Rick and Jason shall provide the Smokes Parties with a fully-executed release of all of the claims referred to in Article I above. The parties expressly agree that no release is granted until all sums specified above have been paid.

### ARTICLE IV: STAND STILL AGREEMENT

4.01   So long as the Smokes Parties are in timely compliance with the payment provisions of Article II above, Rick and Jason shall not commence any litigation or arbitration proceeding against either of the Smokes Parties for claims arising out of, or related to, the Contract.

### ARTICLE V: TOLLING AGREEMENT

5.01   The statute of limitations for Rick and Jason to file any litigation or commence an arbitration proceeding for claims arising out of, or related to, the Contract (or for any action to enforce a judgment that may be entered as a result of such litigation or arbitration) shall be tolled for a period (the "Tolling Period") beginning on the Effective Date and ending on March 31, 2018 or 30 days after all of the payments referred to in Article II above are made, whichever is later. The

Parties agree that the Tolling Period shall not be asserted or used in computing the running of time under any applicable statute of limitations for claims (including, but not limited to claims for breach of contract, fraud, enhanced damages under California Penal Code Section 496 and/or intentional infliction of emotional distress or to set aside voidable transfers) that may be brought by Rick and Jason against the Smokes Parties.

### ARTICLE IV: ATTORNEY'S FEES

4.01   Each party hereto shall bear his or its own Attorney's fees and costs in connection with the preparation and execution of this Agreement. In the event that any party files suit or commences an arbitration proceeding to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to recover their actual attorney's fees.

### ARTICLE V: SUCCESSORS AND ASSIGNS

5.01   No Party to this Agreement shall assign any of its rights, or delegate any of its duties, under this Agreement to any other person or entity.

### ARTICLE VI: NO ADMISSION OF LIABILITY

6.01   It is understood and agreed that this is a compromise and settlement of disputed claims, or potential disputed claims, and the furnishing of the consideration for this Agreement shall not be deemed or construed as an admission of liability or responsibility at any time for any purpose. It is further agreed and understood that this compromise and Agreement are being entered into solely for the purpose of avoiding the expense and inconvenience in prosecuting and defending, against any and all claims, rights, demands, actions, obligations or liabilities arising out of the relationship between the Parties, including with respect to the Contract. The liability

for any and all such disputed claims is expressly denied by the Parties.

6.02 By entering into this Agreement, no Party hereto is admitting, has admitted, nor shall be deemed to have admitted the commission of any wrongful act or failure to perform an act that may have been required of said Party or any agent, servant or employee thereof. Further, no inference may be raised as and against any Party hereto, or any agent, servant or employee thereof that by entering into this Agreement, any Party hereto or any agent, servant or employee thereof is guilty of the commission of a wrongful act or is guilty of failing to perform an act required of said party, or any agent, servant or employee thereof.

### ARTICLE VII: VOLUNTARY ENTRANCE

7.01 The undersigned Parties acknowledge that they have each entered into this Agreement voluntarily, without coercion, based on their own independent judgment and not in reliance upon any representation or promises made by the other Party other than those contained herein. The Parties have read this Agreement and each is fully aware of its contents and of its legal effect.

in this Agreement violates or conflicts with any agreement, contract or understanding to which such Party is subject, or any law, rule, regulation or order, or to any of the charter documents or internal policies or procedures of such Party. Each person whose signature is affixed hereto in a representative capacity represents and warrants that he or she is authorized to execute this Agreement on behalf of and to bind the entity on whose behalf his or her signature is affixed.

### ARTICLE XII: MUTUAL CONTRIBUTION

12.01 Each Party has cooperated in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any Party.

### ARTICLE XIII: MODIFICATION

13.01 This Agreement may not be modified or amended except by an instrument or instruments in writing signed by all Parties hereto. Either Party hereto may, only by an instrument in writing, waive compliance by the other Party hereto with any term or provision of this Agreement. The waiver by any Party hereto of a breach of any term or provision of this Agreement shall not be construed as a waiver of any subsequent breach.

### ARTICLE XIV: TIME

14.01 Time is hereby expressly made of the essence in this Agreement.

### ARTICLE XV: GOVERNING LAW

15.01 This Agreement shall be governed by and construed according to the laws of the

State of California, without regard to any conflict of laws provisions. The Superior Court of the State of California for the County of Los Angeles shall have mandatory exclusive jurisdiction with respect to any disputes, interpretation or enforcement of this Agreement.

### ARTICLE XVI: CONFIDENTIALITY AND NON-DISPARAGEMENT

16.01 Provided that the Parties are in timely compliance with all obligations to perform contained herein, including the obligation for payments to be timely made to Fox, the Parties and their agents and representatives agree not to disclose the terms or existence of this Settlement Agreement, nor the allegations giving rise to the dispute, to third parties and further agree not to publicize the terms or existence of this Settlement Agreement or allegations in any form or forum. This paragraph shall not prohibit the Parties or their legal counsel from disclosing or discussing the terms of this Agreement with their respective insurers, accountants, attorneys, employers, or taxing authorities, or to a Court to enforce its terms including the filing of a redacted copy of the present Agreement. To the extent inquiry is made of a Party to this Agreement as to the matters contained herein, apart from an effort to enforce its terms, the Parties shall state "that the matters between the parties have been amicably resolved."

16.02 In the event that any Party hereto is required by any court, legislative or administrative body (by oral questions, interrogatories, requests for information or documents, subpoena or similar process) ('Legal Process') to disclose any information related to this Agreement that would contravene the provisions of Section 16.01 and provided that the other Party is in timely compliance with all obligations to perform contained herein, the Party being compelled to disclose such information shall use reasonable efforts to provide the other Party with adequate prior written notice so that a protective order or other appropriate remedy may be

sought to maintain the confidentiality of the matters set forth herein.

16.03 Each Party further represents that he/she/it will not, either orally or in writing, make defamatory or otherwise injurious statements concerning the other Party (including their employees, agents, experts, owners, directors) to third parties. Nothing in this Section 16.03 shall prohibit any Party from making truthful statements or providing truthful information in response to any Legal Process, it being understood and agreed that such Party shall use reasonable efforts to notify the other Party of such Legal Process in advance thereof. This provision is a material, essential and indispensable condition of this Agreement.

## ARTICLE XVII: EXECUTION

17.01 This Agreement is not an offer and shall be of no force or effect unless and until it is executed and delivered by each Party hereto. This Agreement and/or any amendments to this Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The execution and

///

///

///

delivery of this Agreement may be by facsimile or other electronic communication system and shall be effective upon receipt thereof.

17.02  IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first set forth above. f

Dated: September O6, 2017

September 22, 2017

Dated: September ____, 2017

_____
Rick and Jason

_____
David Bunevacz

September 22, 2017

Dated: September ____, 2017

Holy Smokes USA, LLC

By _____
David Bunevacz, Managing Member